We're here today on the appeal of a dismissal of my client's copyright infringement, tortious interference with contract, and unfair competition claim against the defendant Learning Tree. I represent plaintiff Kendall Hunt, an Iowa-based educational publisher whose ethics publication was infringed and whose contract was interfered with and whose business was basically unfairly competed with by the defendant. The defendant, Learning Tree... I don't understand the interference when the author changed allegiance. Didn't you have a contract at will, so to speak, with Bonatari? No, thank you, Your Honor. The contract actually isn't at will. It's a publishing contract that in which the... Did he breach it? He did. Did you sue him? Not yet, but it may come to that as additional parties are added to the lawsuit, Your Honor. In further answer to your question, the contract has a non-competition clause with the author, and the author granted plenary intellectual copyrights in the works at issue before the court. So that's the basis of the tortious interference claim, Your Honor. A word about Learning Tree Press, because it's relevant to the jurisdictional question before the court. It was founded within days after its founders quit as editors... Counselor, if you hold up just a minute. We're getting enough static in here. It's a bit distracting. Would you hold the clock? I think that we've got a mic issue. Actually, Your Honor, I called IT, and they say it's in the system, and the system would need a reboot. That would take about 15 minutes, so it's... I can speak up. Well, Mr. Gans, would you come forward, please? Please proceed with your argument. Thank you. The defendant, Learning Tree Press, it's only shareholders, officers, and employees or former employees of Kendall Hunt Publishing Company. They were long-time, long-standing editors and managing editors responsible for the work infringed. They were responsible for contracting with the author to bring that work into Kendall Hunt's IP. They were responsible for the editing process with Iowa headquarters. It is true that somewhere between 15 and 20 years between the two founders and principals of the defendant, Learning Tree Press, they did work for Kendall Hunt remotely out of California and did not have an office in Dubuque, Iowa, which is where Kendall Hunt's headquarters are located. However, they had, in the last two years of employment alone, thousands upon thousands of email communications with Iowa-based Kendall Hunt employees. Do the cases say that email contact like that interstate is sufficient for due process? In and of itself, yes. But there were, if you add up the emails, the calls, the physical visits, week-long training sessions. How many physical visits were there? The record establishes that John Caniglia, the managing editor and founder of Learning Tree Press, or one of the founders, starting in 1995 through, I think 1995 and 1996 came for a few weeks. Or no, no, 1995 through close to 2006 would come for annual trainings. And then his last visit to corporate headquarters was in May of 2018, and I believe he came for two days. With Frank Forcier, the editor who reported up to John Caniglia, the managing editor, he came for sales training when he joined the company in 2005, then I think again in 2006. And the record is silent on any further physical visits by Frank Forcier after those dates. Their work was heavily remote by email, by calls. It was several emails, multiple calls on average a day for the last two years of their employment. So it's not just a few calls, it's many. And those calls and emails, and we provided some sampling of these emails, they were directly related to the works that Kendall Hunt claims were infringed in this case. There is a direct nexus. It's not emails, calls in and of themselves, I agree, Your Honor, insufficient for personal jurisdiction or to comport with due process. But where those calls and emails are inextricably tied to the causes of action and IP infringement and misappropriation alleged in the case, they are relevant and courts have considered those more strongly as a factor under the totality of the circumstances as is the test that the Eighth Circuit uses in these cases. How did the district court address the emails? The district court said that they were, not only the emails, but the communications with headquarters from California about this author's contract and about this author's work were relevant, put some weight on that, but said that the contacts were too tenuous or not related enough to the causes of action, which of course we disagree with and we think we were treated unfairly by the district court on that point, given that we didn't have an evidentiary hearing on any of this. At every turn, we asked for a hearing to come before the court, present witnesses, present exhibits, and the district court in her discretion, which she was of course permitted to do, decided to enter a ruling on the motions, the resistances, the pleadings, the statements proffered, which is fine. But when a court does that, then this court, the Court of Appeals, can review that decision de novo, doesn't have to give it weight, and the district court should have given deference to the plaintiff's asserting personal jurisdiction at this early stage. Disputes of fact should have been resolved in favor of Kendall Hunt, for example. Where there was a conflict in the facts, the marble should have rolled off Kendall Hunt's side, not Learning Tree's side. A few times in the opinion, I believe it was unfairly treated as a preponderance of evidence standard. It's not at this stage. There was no hearing. It was decided based on the briefs and motions and statements, again, which is fine. But then there's a different standard. It's not preponderance of the evidence. It's just more of a plausibility, or is there a prima facie showing made? And on this record, we believe that we did meet a preponderance of the evidence standard, even though we didn't get an evidentiary hearing. But we for sure and certainly meet the prima facie case of personal jurisdiction. The judge in the Prairie Services case, who in the Prairie Services case, we believe is the closest analogy to this case. It's about a group of employees working remotely in South Dakota for a company headquartered in Minnesota. They were hauling gas and fuel and water for the oil industry, I think, in the upper Midwest. That judge said, at this early stage, you just ask if there's a prima facie showing of personal jurisdiction. If the defendant learning to repress wants to contest it through trial, I think they can. But at this early stage, when the district court decided not to have an evidentiary hearing on it, I think they made a mistake. And I think my client, Kendall Hunt, was treated unfairly. So there's that issue. There's the issue on the single sale doctrine. It's undisputed that there was infringement. For purposes of this proceeding, we assume that there was infringement. They did sell a work into the state of Iowa. But you don't contend that that by itself would be enough, do you? I don't concede that, but I do concede it would be a different case. Why I don't concede it, Your Honor, is because if you look at the Zizzle, I think it's called Zizzle, the Zizzle Sliding, appropriate name for a sliding scale. I think it's Zazzle. Zazzle is the most recent court from the 8th Circuit decided, I think, last August or September. Zippo, maybe. Zippo, yes. Thank you, Your Honor. It's a Zippo case. If you look at that sliding scale, the website that LearningTree puts out there for their electronic educational publications, they're not just passive websites where people can post content. It's on the interactive side. When you go onto LearningTree's website to buy a book on ethics, let's say, they ask for your name. They ask for an account. You have to set up an account. A contract is formed. Payment arrangements are made. It's a full-on interactive website. Closer question. I agree. But we don't concede that that in and of itself wouldn't be a proper foundation for the establishment of personal jurisdiction, especially at the prima facie case or stage. Does it matter that the single transaction is instigated by or at least connected to the litigation itself by the two of the parties? It's directly related. That gives more merit, more strength to the proposition that that sale of the actual infringing work into the forum jurisdiction is a proper foundation for personal jurisdiction. But, Your Honor, to your initial conceptual question, that sale related along with the totality of the circumstances and the decades of the founders' contacts, direct, intentional contacts with the forum state where they were recruiting this intellectual property, where they had access to this intellectual property, where they had the access and knowledge of these contracts in the totality of the circumstances with that sale, there's just not minimum contacts. There's maximum contacts. There's maximum harm intentionally directed at the forum state. That's the harm analysis under the Calder case, which I understand was caveated and qualified by the Walden case in 2014. But we see this as a fairly clear case of personal jurisdiction and we're a little surprised after 20 pages of recitation of contacts with the forum jurisdiction that the case was dismissed, quite honestly. Unless there are immediate questions, I would reserve. I want to get your response to what interests me about this case. Okay. The minimum contacts analysis is judicial interpretation of due process rights dating for more than a century. Copyright is a unique form of intellectual property. It is so unique and so significant that the founders put it in the Constitution. And it is not locally based. It doesn't have a tangible foundation like trademark or trade secret, all the other things. The interference tends to be local. To get a copyright is a right granted to an author in exchange for giving the public generally access to his works, his or her works. So let's take Mickey Mouse, a copyright most in the news since it's partially expired or expiring. Minimum contacts analysis would suggest that Walt Disney, in the year after he got his copyright in California, would have to go to Bangor, Maine, or Greenville, Mississippi, or Miami, Florida, or far north of Minnesota, to sue anyone who was using Mickey Mouse just locally. That doesn't seem right to me. It seems to me that the due process analysis is being applied sort of in whole cloth where it doesn't belong. Has anyone, any case or any secondary authority to your knowledge talked about that? I'm sorry, Your Honor. I don't know. I don't think they have. I think it's a great question. I understand why this has just been briefed and argued and decided by the district court in traditional terms. It has been. But to your point, and I'd make a general point about IP, there's this intimation, if not outright analysis, that infringement of trademark or misappropriation of trade secret, well, that's different than infringement of copyright. I think that's a distinction without a difference. IP is resident where the owner resides. But trademark use is in a location almost by definition. So when an out-of-state defendant infringes, allegedly infringes a trademark, it's doing it locally. And so why should the trademark owner, registered or otherwise, in 1,000 miles away get to drag that alleged infringer at great expense to defend in the owner's backyard? I can understand that. I think the due process element there is powerful. Copyright is different. Well, factually related to this case, I'll just make the one final comment. The district court kind of was going to this idea, well, you say that the defendant, through its founders, while employed for decades, had access to the servers, a server and a software, a publishing software called ShareRoom or a data room called ShareRoom. It had access to this work, which is an element of a copyright infringement cause of action, like access. That access is tied to their contact with the foreign state. It couldn't be more inextricably tied. I mean, it's perfect for a personal jurisdiction analysis. And the judge had the comment, I think, in her opinion that, well, yeah, but they could have just gone to the library and got this book, too, out in California. Yeah, but again, that goes back to the unfairness in the district court. But why do you assume that? I mean, isn't that a conflict of fact that should have went Kendall Hunt's way, especially when you consider the same typographical and grammatical errors as are in Kendall Hunt's native files on a server located in Dubuque, Iowa, showed up in the defendant's publication? Counselor, you're about to exhaust your time. I could give you an extra minute if you'll save a little bit for your rebuttal. Would you like that? Maybe a minute for rebuttal, Your Honor. All right. Thank you. Mr. Brokawin? Or maybe Brockin. I don't know. You can tell me how it's properly. Chad Brockin, Your Honor. Thank you very much. Your Honor, may it please the court. My name is Chad Brockin, and I represent the defendant, Appellee Learning Tree Publishing Corporation. This appeal presents two straightforward questions for the court to determine whether or not Learning Tree Publishing Corporation is subject to specific personal jurisdiction within the state of Iowa. That's first, whether or not a single sham transaction, sham purchase by plaintiff appellant Kendall Hunt is sufficient to establish specific personal jurisdiction over Learning Tree. I thought the nature of the claim was an essential part of the minimum context analysis. The nature of the claim, Your Honor, is absolutely an essential part. So how can this be straightforward unless you've researched my observation and there's nothing to it? Thank you, Your Honor. I'll try to address that. There appear to be two issues that the court can resolve here on appeal, and the first is whether or not the sham transaction, the single sale, is enough to establish specific personal jurisdiction. And furthermore, even if not, whether or not Kendall Hunt's former remote employees, the founders of Learning Tree, whether those contacts with Kendall Hunt's people while employed by Kendall Hunt establish specific personal jurisdiction. The Zazzle case recently entered by this court indicates, at least based on the facts of those cases, a single sale, which was not a sham sale or a phony sale in that case, but a single sale with a nationwide website was not enough to establish specific personal jurisdiction in Zazzle. Now looking at the minimum context analysis of whether or not, nonetheless, Learning Tree's founders' prior employment with Kendall Hunt would establish minimum context. What we look at there is whether or not the defendants' contacts are purposefully directed at the form and whether they relate to the claims at issue. Do you cite a copyright case in your brief? We do not. It's very hard to find. Your Honor, and your question was well taken for counsel for appellant, and I share his position that I do not. I've put it out to counsel for appellant because you're the one that would suffer from where I'm going. So your response is more important to me. Understood, Your Honor. I don't have a specific case analyzing the due process analysis under the. . . It's hard to even find a copyright minimum context case. What we found or saw was cases that are evaluating the trademark or other situations by looking at whether or not, and the way I would ask the court to look at this. . . Do you have a copyright case to refer me to? I do not. Okay, that's fine. We look quickly, and there isn't anything that either discussed the point I'm making or did anything but generally follow minimum contact analysis, which is what's been briefed and argued and decided. Go ahead with what's on the table. Thank you, Your Honor. When looking at that second issue under the minimum context analysis, what's essential and what's important for the court is to look at the defendant's context, not just with the employees of Kendall Hunt, but with the forum state and what you'll find, and then whether or not those contacts with the forum state, with the state of Iowa, relate to the claims. And so what you'll see in the record, Your Honors, is emails. You'll see paychecks received from an Iowa bank. You'll see phone calls into the state of Iowa to Kendall Hunt employees related to their employment with Kendall Hunt. What you won't find is an allegation of any violation of an employment agreement by the former Kendall Hunt employees. Well, is there anything that indicates that clearly the number of emails and communications from California to Iowa that's a part of the record here is not sufficient to at least be a consideration for minimum contacts? What there isn't in the record, Your Honor, is any evidence that those communications were part of any improper, whether it be infringement on a copyright, interference with a contract with Professor Biomonte, or any of the elements of the claims that have been asserted in the district court. So the defendant's position would be that it could be one communication with Kendall Hunt. There could be a thousand communications with Kendall Hunt. What's relevant is whether or not those communications, whether there's evidence in the record to show that those communications related to the claims at issue. What the district court found is with respect to the claims... So the access to the copyrighted material didn't come through those communications. Is that what you're saying? There's no evidence that it did. In fact, what the district court found was that access is not in dispute. The author of the copyrighted work, Your Honor, is the same author as the alleged infringing work. So with respect to the copyright claim, there was no indication that the former employment by Kendall Hunt was necessary to obtain any copyright information. Similarly, with respect to the tortious interference with contract claim, there was no indication that any communications with Professor Baiamonte took place in the state of Iowa. And there's no factual nexus between that claim and the state of Iowa. And the unfair competition claim is related or similar to the copyright and tortious interference claim. Your Honors, when looked at with the sham sale the day before the complaint is somewhat... I would argue somewhat of a red herring. I don't think that's the meat of the issue for the court. The Zazzle case, I would submit, gets to a place where when you're looking at the website in Zazzle, you've got an interactive website that can be accessed from anywhere in the United States to purchase. In that case, I believe it was a shirt. I believe in Zazzle. The website at issue by LearningTree is fundamentally different. LearningTree markets its online course books and textbooks to educational institutions, to professors, who ultimately then assign that course book or textbook to its student. LearningTree markets those to educational institutions and professors in California. It does not market those to any educational institution or professor in the state of Iowa. What happens after the course book is assigned to a student, the student goes to the website. Do they have only application in California? You're saying they're marketed to... They're marketed to professors. Do they have a national application or an application that could work in Iowa? You can access it in Iowa, as Kendall Hunt, an employee, has demonstrated how to do so by entering in... What I'm saying is, would there be a reason for an Iowa institution or professor to access the book and use it in Iowa or use the materials in Iowa? Not to my knowledge, but I don't know that that's in the record or that there's any record evidence on that point. What I know is that in order to access the information, it is different than going to Amazon or going to Walmart's website. This is a situation where specific information is required to be inputted, such as student ID, student email address. In fact, in order to access that information, in this case, phony information, was inserted by the Kendall Hunt employee. With respect to whether or not the singular transaction would support jurisdiction, LearningTree's position is where the facts on Zazzle did not support jurisdiction, based on the single suit sale, they would be even less connected. Those contacts, that alleged sale in this case, would be even less connected with the forum state to establish jurisdiction here. Switching over to the second question, Kendall Hunt's former employees' contacts with the forum state, LearningTree requests this court to look at those employees' contacts with the forum state and analyze whether or not those contacts with the forum state that are in the evidence are related to the claims at issue. Based on the record evidence, LearningTree would submit that they are not, that the district court correctly ruled that there was no jurisdiction. Why shouldn't this issue be decided under 1404A? Why do we need the due process clause to decide where this ought to be, where the convenience, et cetera, is the best place to try this? Your Honor, what's at issue? Other than you want to be out of here now. Or run up the cost of pursuing the claim. It seems to me 1404A gives the district court all the ammunition it needs to put the discovery and trial in the right place. Your Honor, I would believe that a possibility, if the court affirms the decision of the district court, there would be a possibility that a lawsuit could be filed in a federal court. No, no, I'm suggesting we reverse and let the district court apply 1404A in its best discretion. Your Honor, this case and the way that the LearningTree Publishing Corporation sees this as an unconstitutional attempt to subject two former employees of Kendall Hunt to come to the state of Iowa, a place they've never worked, never lived, in order to defend against claims that are unrelated to their former employment of Kendall Hunt, it is violative of the due process clause as the district court correctly ruled. So dismissal at the motion to dismiss stage is an appropriate remedy. But it's a judicial doctrine. I mean, it's for the courts to decide the proper line between the due process clause and convenience and venue convenience and so forth. No statute covers that. You can't read it from the plain meaning of the due process clause.  Your Honor, what I would submit is that it is not discretion, but it's the decision. It's a judicial principle. Yeah, and the LearningTree Publishing Corporation would argue that in this case the personal jurisdiction is absent and the case was properly dismissed irrespective of other opportunities for the court to address grievances that may exist. Thank you, Your Honor. Thank you, counsel. Thank you for your accommodation, Your Honor. Just real briefly, a point about Zazzle, just because of its proximity to this hearing and its newness. Kendall Hunt would concede this case would be a lot more like Zazzle if in Zazzle the defendant had worked for BASIC, Boys and Brothers and Sisters in Christ, I think is that acronym, for a number of years, was on their payroll, helped design the logo, was involved in the development process, and then left the employ of Zazzle or BASIC. The strong similarity between the two cases is that the purchase itself was not a purchase from the ordinary course of business, but a purchase made in anticipation of litigation. Yeah, and we think sham is an ugly word for that in this context. Well, I didn't use it. We think it's irrelevant in the ultimate analysis, and I think I heard that it was conceded, but we go with the judge in Mattel who basically said, look, it's an order for a product that was put into the stream of commerce. Who made that order? It's a factor, but it doesn't somehow turn the transaction into a sham transaction that should be disregarded by the court. It should be regarded by the court. That's Judge Sweet's opinion in the Mattel Inc. versus Adventure Apparel. The fact that sales were made to an agent of the plaintiff is irrelevant because defendant's activities were purposeful, and there was substantial relationship between the transaction and the claim asserted, which is exactly the case here, Your Honor. I'm past my time. All right. Thank you, Your Honor. Thank you, Mr. Curtis. Thank you also, Mr. Brock. And the court appreciates both counsel's arguments to us this morning. We'll take your case under advisement. Thank you.